

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEAST DIVISION

ADS CORPORATION,                         ]
                                         ]
    Plaintiff(s),                        ]
                                         ]
    vs.                                  ] CV03-CO-00638-NE
                                         ]
UTILITY SYSTEMS SCIENCE &                ]
SOFTWARE, INC., et al.                   ]
                                         ]
    Defendant(s).                        ]

**ENTERED**
MAR 2 3 2004

## MEMORANDUM OF OPINION

### I.   INTRODUCTION.

Presently before the court is a motion to dismiss, or in the alternative,

to transfer, filed by the defendants Utility Systems Science & Software, Inc.

("US Cubed") and Technology Resource Center, Inc. ("TRC") on April 28,

2003. [Doc. # 16.]  The court also has for consideration defendant Thomas

Williams' ("Mr. Williams") motion to transfer, filed April 28, 2003. [Doc. #

15.]  Upon due consideration, the court is of the opinion that US Cubed and

TRC's motion to dismiss is due to be denied.  Defendant Thomas Williams'

motion to transfer is due to be denied.

II.   FACTS.

ADS Corporation is a Delaware corporation headquartered in Huntsville, Alabama, with several regional offices around the United States, including two in California.   ADS is in the business of developing and perfecting permanent waste water flow-monitoring networks for municipalities and private sector customers. [Compl. ¶ 7.]   ADS also developed IntelliScan® which is a comprehensive information management system that permits customers to proactively manage their waste water collection systems. [Compl. ¶ 11.]

During its development of IntelliScan®, ADS employed defendant Thomas Williams.  Mr. Williams' duties included acting as the IntelliScan® project manager for ADS's San Diego, California; Culver City, California; and Salem, Oregon; municipal customers. [Compl. ¶ 15.]   Mr. Williams' employment at ADS was subject to a written employment agreement which is governed by Alabama law and in which Mr. Williams also consented to personal jurisdiction of Alabama state and federal courts. [Compl. ¶ 21.]

TRC was retained by ADS in December of 2000 to assist ADS with its development and implementation of IntelliScan® and specifically, to assist ADS in its contract with Culver City, California. [Compl. ¶ 32.] The services performed by TRC were not subject to a written contract, however TRC and ADS executed a written confidentiality agreement which is governed by Alabama law. [Compl. ¶¶ 32-34.]

In January of 2001, ADS signed a contract with Culver City, California, to deliver IntelliScan® to Culver City for use with its existing metropolitan sewage system. Mr. Williams and TRC provided assistance to ADS in performing its obligations under its contract with Culver City. [Compl. ¶ 32.]

Mr. Williams announced in March of 2002 that he was terminating his employment with ADS. [Compl. ¶ 44.] Afterwards, Mr. Williams took a position of employment with US Cubed, whose business, the plaintiff contends, looked very similar, if not identical, to that of ADS. [Compl. ¶ 47.]

In May of 2002, Culver City representatives visited ADS's Huntsville, Alabama office for a Factory Acceptance Test ("FAT") of ADS's IntelliScan® system. Mark Serres, a principal of TRC, was also in attendance. [Compl. ¶ 45.] Shortly thereafter, Culver City began to suggest to ADS that it was

considering terminating its contract with ADS. In January of 2003, Culver City representatives indicated to ADS that they did intend to terminate their contract. [Compl. ¶ 52.]

ADS filed the instant action on March 20, 2003, against US Cubed, TRC, Thomas Williams, and Jerry Camp alleging misappropriation of trade secrets, breach of contract, copyright infringement, intentional interference with business relations, and unfair competition. [Compl.]  Specifically, the complaint sets forth counts against all defendants for copyright infringement and misappropriation of trade secrets. ADS alleges breach of contract claims against defendant TRC, arising out of its nondisclosure agreement, and against Mr. Williams for breach of contract, arising from a non-compete employment agreement. [Id.]  ADS also states a count for tortious interference with business relations against US Cubed and Mr. Williams and a claim against US Cubed for unfair competition. [Id.]

Defendants US Cubed and TRC filed a motion to dismiss, or in the alternative, to transfer on April 28, 2003. [Doc. # 16.]  Specifically, defendants US Cubed and TRC have moved to dismiss the claims against them for lack of personal jurisdiction, or in the alternative, to transfer the

case to the United States District Court for the Central District of California. Mr. Williams has moved only to transfer the case to the Central District of California.

III.    STANDARD.

The defendants US Cubed and TRC have moved to dismiss ADS's claims for lack of personal jurisdiction.  "[O]n a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  The plaintiff establishes a prima facie case if he presents enough evidence to withstand a motion for directed verdict.  *Id.*   The district court will accept "the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits."  *Id.*  Where the complaint and affidavits do conflict, the court "must construe all reasonable inferences in favor of the plaintiff."  *Id.*

A federal court must conduct a two-part analysis before finding personal jurisdiction over a non-resident defendant.  *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir. 1985).  First, the court looks to the applicable state statute to assess the existence of

personal jurisdiction. *Id.* If the court is convinced of the first inquiry, then it considers whether sufficient minimum contacts exist with that state so as not to "offend traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Id.* at 1522 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Because of the broad Alabama long-arm statute, only the latter inquiry is necessary. *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 n.3 (11th Cir. 1988).

IV.   DISCUSSION.

    A.   Motion to Dismiss.

US Cubed and TRC move this court to dismiss ADS's claims against them for lack of personal jurisdiction. ADS alleges that TRC is subject to personal jurisdiction because of tortious acts committed by Mark Serres, TRC's vice president, on visits to Alabama, a non-disclosure agreement between TRC and ADS, and TRC's repeated communications to ADS. ADS alleges that this court has jurisdiction over US Cubed because it has purposefully directed tortious conduct toward Alabama and that TRC's contact with Alabama may be imputed to US Cubed because the two companies are alter egos.

The Eleven Circuit has interpreted the minimum contacts requirement as having three criteria:

> First the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that he should reasonably anticipate being haled into court there.

*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.1996) (quoting *Francosteel Corp., Unimetal Normandy v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994)).

The court must determine whether "*each* defendant has established minimum contacts with Alabama." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 285 (11th Cir. 1996) (emphasis added). Therefore, this discussion will address each defendant in turn.

### 1.   TRC.

TRC is a corporation organized and existing under the laws of California, with its principal place of business in Santa Ana, California. ADS claims that this court has personal jurisdiction over TRC and supports its argument by pointing to ADS and TRC's execution of a non-disclosure

agreement, which is to be governed under Alabama law.  ADS further points

to invoices directed by TRC to ADS's Alabama headquarters, to two trips to

Alabama by TRC principal, Mark Serres, and the intentional conduct of TRC

toward ADS.

    ADS argues that TRC subjected itself to Alabama law by executing the

non-disclosure agreement and suggests that, for this reason, personal

jurisdiction over TRC would be proper.  ADS cites *Andalusia Distributing Co.,*

*Inc. v. Singer Hardware Co., Inc.*, 822 So. 2d 1180, 1184 (Ala. 2001), for this

proposition.  However, the Alabama Supreme Court in *Singer* addressed the

effect of forum-selection clauses on personal jurisdiction, not choice-of-law

clauses.   The Court specifically stated in *Singer* that a forum-selection

clause which stated that Alabama law would govern is not the sole factor in

deciding whether personal jurisdiction exists over an out-of-state defendant.

*Id.* at 1183.  Instead, the court focused on the ongoing business relationship

between the parties and the fact that the defendants knew they were

guarantors on payments being made to an Alabama corporation such that

they could foresee being haled to Alabama in the event of a default.  *Id.* at

1184.  The non-disclosure agreement between TRC and ADS merely states

that the agreement will be governed by the domestic laws of the State of Alabama. [Compl. Ex. C ¶ 18.]

ADS further argues that TRC's invoices were paid from Alabama and that TRC repeatedly communicated with ADS representatives by computer, telephone, faxes, and e-mail. The Eleventh Circuit, however, has pointed out that such factors have been held to be ancillary and cannot alone constitute minimum contacts as required by due process. *See Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1059 (11th Cir. 1986).

ADS also asserts that TRC has minimum contacts with Alabama because of its other conduct such as Mark Serres' visits to Alabama on behalf of TRC. Specifically, ADS has attached to their brief in opposition of defendants' motion to dismiss [Doc. # 22], the affidavit of Luis Mijares, a Huntsville ADS employee. [Mijares Aff., ¶10, Ex. C.]  Mr. Mijares stated that during Mr. Serres' second trip to Huntsville, Alabama, in May of 2002, he noticed that Mr. Serres was making negative statements to the Culver City representatives and appeared to be pointing out alleged deficiencies in the ADS IntelliScan® system. *Id.*  ADS goes further to argue that these two

visits, the repeated communications with ADS, and the ultimate development of US Cubed, constituted purposeful and intentional conduct on the part of TRC which it knew would be felt by ADS in Alabama.

ADS, among other claims, alleges that TRC, through Mark Serres and otherwise, intentionally interfered with the business relationship it had with Culver City. Due Process requires that before TRC can be made a party in this court its "conduct and connection with [this] . . . state . . . [must be] such that [it] should reasonably anticipate being haled into court [here.]" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

ADS asserts that the conduct of TRC was not only intentional but was directed at ADS and in part carried out in the State of Alabama at the ADS facility. [Compl. and Mijares Aff. Ex. C at ¶ 10.] "When the conduct is intentional and is directed at a victim in another state, the defendant may be held to have expected its conduct to have an effect in that state, and further to have expected that the victim will bring suit for redress there." *Coblentz GMC/Freightliner, Inc. v. General Motors Corporation*, 724 F. Supp. 1364, 1368 (M.D. Ala. 1989) *aff'd*, 932 F.2d 977 (11th Cir. 1991). This

principal was explained by the Supreme Court in *Burger King Corporation v. Rudzewicz.*

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations". . . . By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,"... the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit". *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

471 U.S. 462, 472 (1985).

This "'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Id.* The tort of interference with business relations is an intentional tort. The material elements of the tort of interference with business relations include: "(1) The existence of a contract or

business relation; (2) defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of [the] defendant's interference." *Lowder Realty, Inc. v. Odom*, 495 So. 2d 23, 25 (Ala. 1986), *overruled on other grounds by State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834 (Ala. 1998). In addition, the plaintiff alleges that the conduct of TRC was intentional. [Compl. ¶ 107.] Even though some of the alleged conduct may have occurred outside Alabama, the effect would obviously be felt within Alabama. This court does not find it necessary to evaluate the other causes of action asserted in the complaint as it would not alter the result of the analysis.

Even if the factors alleged by ADS, taken individually, would not suffice to establish that TRC has minimum contacts with the State of Alabama such that this court may exercise personal jurisdiction over it, that is not the end of the analysis. This court must also determine whether the contacts *together* justify exercising personal jurisdiction consistent with due process and which would not offend "traditional notions of fair play and substantial justice". *Int'l Shoe*, 326 U.S. 310, 316

(1945). The non-disclosure agreement, Mark Serres' two visits to Alabama on behalf of TRC where he allegedly engaged in tortious conduct, ADS's payments of TRC invoices from its Alabama headquarters, the numerous telephone calls and e-mails between the parties, and the alleged intentional tortious conduct directed at ADS by TRC must all be considered in determining personal jurisdiction. When all the factors are considered together, the court has personal jurisdiction over TRC.

The court finds that ADS has met its burden of establishing a prima facie case of personal jurisdiction over TRC, a non-resident defendant.

    2.  US Cubed.

ADS contends that this court can exercise personal jurisdiction over US Cubed because it purposefully directed tortious conduct toward Alabama. Specifically, ADS alleges that US Cubed wrongfully accepted Mr. Williams' and TRC's improperly-obtained ADS copyrights and proprietary information so that it could compete with ADS. [Compl. ¶ 55.] ADS also argues that US Cubed is so closely affiliated with TRC that the

two are alter egos and that TRC's contacts with Alabama may be imputed to US Cubed.

As previously discussed, the mere allegation that US Cubed committed certain torts that have allegedly injured ADS in Alabama does not necessarily mean that US Cubed has the required minimum contacts with Alabama to sustain personal jurisdiction. *See Coblentz GMC/Freightliner Inc., v. General Motors Corp.*, 724 F. Supp. 1364, 1368 (M.D. Ala. 1989).

Normally, "a defendant corporation's contacts with a forum may not be attributed to ... affiliated corporations, or other parties." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). However, there is an exception to that general rule where "affiliated parties are alter egos of a corporation over which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." *See Minnesota Mining & Mfg. Co. v. Eco Chem., Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985).

"Alter ego status is found when two corporations have substantial identity of management, business purpose, operation, equipment,

customers, and supervision, as well as ownership." *Graphics Comm. Int'l Union v. Southern Coupon*, 852 F. Supp. 970 (M.D. Ala. 1993).

ADS claims that there is sufficient overlap between TRC and US Cubed for this court to impute TRC's contacts with Alabama to US Cubed. US Cubed is owned by Mark Serres, Gabe Chavez, and Tony Chavez. TRC is owned by Mark Serres and Gabe Chavez, with Tony Chavez acting as Chief Financial Officer but holding no ownership interest.  Gabe Chavez manages TRC on a daily basis, while Mark Serres oversees the day-to-day operations of US Cubed.  The defendants admit that TRC, on occasion, has staffed US Cubed temporarily but maintains that it invoiced and billed US Cubed accordingly. TRC and US Cubed also concede that they do share the same office space and office equipment but contend that they are separate businesses, with separate bank accounts, books, records, capital accounts, and payroll accounts.  The defendants argue that US Cubed is in the field of wastewater systems while TRC provides specialty technical engineering services and therefore serve different industries.

In determining whether two entities are alter egos, most courts apply an analysis similar to that of "piercing the corporate veil." "[M]ere control or domination of a corporation is not enough because a Plaintiff must show fraud in asserting the corporate existence or must show that *recognition of the corporate existence will result in injustice and/or inequitable consequences.*" *Whatley v. Merit Distrib. Serv.*, Nos. CIV.A.99-0166-CB-S, CIV.A.99-0167-CB-S, 2001 WL 228053, at *2 (S.D. Ala. Feb. 5, 2001) (emphasis added).

This court is of the opinion that, in order to prevent an injustice, it must find that US Cubed and TRC are alter egos. ADS alleges in its complaint that TRC, Mr. Williams, and Mr. Camp misappropriated ADS's copyrighted software, along with other proprietary information, to form US Cubed. ADS claims US Cubed has developed an almost identical wastewater management product and has marketed it directly against ADS. US Cubed is a necessary party to this litigation and to acknowledge corporate formalities would result in injustice and inequitable consequences to the plaintiff. Therefore, this court will allow personal jurisdiction over TRC to be imputed to US Cubed.

Page 16 of 23

> It is clear that ... Courts can pierce the corporate veil of a
> corporation in order to reach the "alter egos" of the
> defendant directly involved.  This is especially true where the
> near identity of two corporations should be disregarded in
> order to prevent manifest injustice to third parties ... or
> where the separate identity of two corporations should be
> disregarded where one corporation becomes the conduit of
> another.

*Talen's Landing, Inc. v. M/V Venture*, 656 F.2d 1157 (5th Cir. 1981).

Even if TRC's jurisdiction was not imputed to US Cubed, personal

jurisdiction over US Cubed would still exist.  The plaintiff alleges that US

Cubed intentionally interfered with ADS' business relations.  ADS alleges

that US Cubed's primary officers, directors, and employees, given their

history with ADS, were aware that their wrongful conduct would have an

impact on an Alabama company.  As previously mentioned in this opinion,

"When the conduct is intentional and is directed at a victim in another

state, the defendant may be held to have expected its conduct to have

an effect in that state, and further to have expected that the victim will

bring suit for redress there."  *Coblentz GMC / Freightliner, Inc. v.*

*General Motors Corp.*, 724 F. Supp. 1364, 1368 (M.D. Ala. 1989), *aff'd*,

932 F.2d 977 (11th Cir. 1991).

Accordingly, this court finds that ADS has met its burden of establishing a prima facie case of personal jurisdiction over US Cubed, a non-resident defendant.

B.    Thomas Williams' Motion to Transfer.

Mr. Williams moves this court for an order transferring this action to the United States District Court for the Central District of California on the grounds that transfer is mandated for the convenience of the parties and in the interest of justice. [Doc. # 15.]

28 U.S.C. § 1404(a) states that a court may transfer a case to any other district where it might have been brought for the convenience of parties and witnesses, and in the interest of justice.  Mr. Williams does not contest that this case could have been brought in California, as Mr. Williams is a resident of that State.  Therefore, the court does not need to consider whether the action could be transferred to California but rather whether the action should be moved there for the convenience of the parties and witnesses and in the interest of justice.

When making the decision whether to transfer a case, courts generally rely on: "(1) the plaintiffs choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses, and the availability of witnesses through compulsory process; (4) the location of documents and other sources of proof; (5) the relative ability of the parties to bear the expense of changing the forum; and (6) trial efficiency and expense to the justice system." *Gould v. National Life Insurance Co.*, 990 F. Supp. 1354, 1357-58 (M.D. Ala. 1998).

Mr. Williams argues that ADS's contract with Culver City, California, is at the heart of this action.  He states that the records of the Culver City Council, which ultimately terminated ADS's contract, are located in that city. [Shissler Aff. ¶ 9.] Further, Mr. Williams argues that essential defense witnesses will likewise be burdened if this action proceeds in Alabama.  For instance, Brian Royer, the person who designed the allegedly infringing system and who also has personal knowledge of the Culver City project and the software involved in it, is a resident of Southern California.  Other witnesses include California residents who are also employees of California municipalities.  Mr. Williams contends that

requiring these individuals to participate in litigation in Alabama would disrupt and interfere with essential public functions for Culver City. [Shissler Aff. ¶ 10.]

Mr. Williams also argues that he himself will be greatly inconvenienced if he is made to defend this action in Alabama.  He states that he is the father of six children (with one on the way) and the caretaker of his two elderly grandmothers who live with him.  [Williams Aff. ¶ 6.]  He also states that the financial burden of defending this action in Alabama would be great for him.  *Id.*

Mr. Williams also states as support for his motion to transfer that California has a significant interest in this action because it involves the Culver City contract and ADS's performance is of public interest to citizens of Culver City and the State of California.

ADS, on the other hand, contends that although the Culver City project is important to its claims, it is not at the heart of the matter. ADS states that its claims involve misappropriation of its IntelliScan® system, which was developed and implemented almost exclusively in

Alabama.  Therefore, ADS argues that some of the people who are in the best position to determine the extent of the defendant's misappropriation or copying of IntelliScan® are located in Alabama. [Saddler Aff. ¶¶ 6-11.]

ADS further argues that primary documents and records involving IntelliScan® are located in Alabama, not in ADS's California regional or project offices.  In addition, ADS claims that documents relating to the FAT test for the Culver City project, conducted in Huntsville, Alabama, in May 2002, are located in Alabama and relate to ADS' tortious interference claim.

ADS contends that Alabama also has a strong public interest in this action, which involves a local corporation and which caused significant economic injury.

Mr. Williams and ADS both claim that they will be greatly inconvenienced if they are made to litigate this case in another state. Both claim their essential witnesses will be inconvenienced if made to travel across the country and that important documents are located in

each party's respective states.  Therefore, the convenience of the parties

is in equipoise and a motion to transfer cannot simply shift the burden of

inconvenience from the defendant to the plaintiff.  *Elbeco, Inc. v.*

*Estrella de Plato, Corp.*, 989 F. Supp. 669, 679 (E.D. Pa. 1997).  "The

plaintiff's choice of forum should not be disturbed unless it is clearly

outweighed by other considerations."  *Robinson v. Giarmarco & Bill,*

*P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650

F.2d 610 (5th Cir. 1981)).  As there is a strong presumption in favor of and

great weight given to a plaintiff's choice of forum, "[w]here the balance

of conveniences is in equipoise, plaintiff's choice of forum should not be

disturbed."  *Photoactive Prods, Inc. v. AL-OR Int'l Ltd.*, 99 F. Supp. 2d

281, 293 (E.D.N.Y. 2000).

While it is clearly more convenient for Mr. Williams to litigate this

case in California, he has failed to carry his burden of showing that

California clearly outweighs ADS's choice of Alabama as the forum.

Accordingly, Mr. Williams' motion to transfer this case to the Central

District of California should be denied.

C.    US Cubed & TRC's Alternative Motion to Transfer.

For the reasons discussed above, US Cubed and TRC's alternative motion to transfer is due to be denied as well.

V.    CONCLUSION.

In sum, the court is of the opinion that US Cubed and TRC's motion to dismiss for lack of personal jurisdiction and alternative motion to transfer are due to be denied.  Furthermore, Thomas Williams' motion to transfer is due to be denied.  The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ____ of  March, 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE